IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE STATE OF NEBRASKA

| | | |
|---|---|---|
| RICHARD M. SMITH, et al. | ) | CASE NO. 4:07-cv-03101 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM BRIEF** |
| | ) | **IN SUPPORT OF DEFENDANTS'** |
| MITCH PARKER, et al. | ) | **MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |

**I.
INTRODUCTION**

The Plaintiffs are owners of businesses selling alcoholic beverages in Pender, Nebraska, which is within the original boundaries of the Omaha Indian Reservation. Rather than complying with the Omaha Tribe's federally approved ordinance requiring a tribal liquor license, as other non-Indian liquor retailers within the Omaha Indian Reservation have done, the Plaintiffs sued to restrain the Omaha Tribe Council from enforcing the ordinance against them, claiming that the village of Pender is no longer part of the Omaha Indian Reservation. The Plaintiffs have therefore chosen not to pursue any of the remedies available to them in Omaha tribal forums, and instead have gone straight to federal court to challenge the Omaha Tribe's authority.

The United States Supreme Court, in deference to the sovereignty of Indian Tribes and to promote tribal self government, has stated in clear and forceful terms that Tribal Court remedies must first be exhausted before Plaintiffs can resort to federal court even where the issues presented challenge the Tribes' regulatory or adjudicatory jurisdiction. National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845 (1985); Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9 (1987). While this doctrine is one of comity, it is viewed as a "mandatory" requirement by Federal courts including the Eighth Circuit. Gaming World Int. v. White Earth Chippiwa Ind.,

1

317 F.3d 840, 849 (8th Cir. 2003). See also, Duncan Energy v. Three Affiliated Tribes, 27 F.3d 1294, 1300 (8th Cir. 1994).[1]

This therefore presents a threshold question for this Court. As will be discussed in more detail below, this case should be dismissed or stayed pending an exhaustion of tribal remedies by the Plaintiffs.

## II.
## STATEMENT OF FACTS

The amended complaint filed by the Plaintiffs alleges the following facts.

The Defendants are members of the Omaha Tribal Council. (Compl. at ¶8-15). On February 28, 2006, the Secretary of the Interior approved amendments to Title 8 of the Omaha Tribal Code, known as the Alcoholic Beverage Control Title ("ABCT"). (Compl. at ¶28; Exhibit 1 to Complaint). The purpose of the ABCT "is to govern the sale, possession and distribution of alcohol within the Omaha Tribe's Indian Reservation." (Compl. at ¶29).

The Plaintiffs are owners of businesses selling alcoholic beverages in Pender, Nebraska. (Compl. at ¶36). None of the Plaintiffs are members of the Omaha Tribe. (Conpl. at ¶41). The Defendants have treated Pender, and the Plaintiffs, as part of the Omaha Indian Reservation. (Compl. at ¶54). Defendants have threatened $10,000 fines and Tribal Court enforcement proceedings against Plaintiffs if they failed to pay for a Tribal liquor license by January 1, 2007. (Compl. at ¶33). Plaintiffs have not applied nor paid for a liquor license from the Omaha Tribe. (Compl. at ¶34).

Pender is situated on land that lies west of the Sioux City and Nebraska railroad right of way, as that term is defined in the 1882 Act of Congress (the "1882 Act"). (Compl. at ¶43). The

---

[1] "This court has previously interpreted National Farmers Union and Iowa Mutual to require exhaustion of tribal court remedies before a case may be considered by a federal district court." Duncan Energy, supra. at p. 1300.

1882 Act authorized the sale of part of the trust land located on the Omaha Indian Reservation west of the railroad right of way to homesteaders, including the lands on which the Liquor Retailers are currently located. (Compl. at ¶44). The 1882 Act established a process whereby homesteaders obtained the land west of the railroad right of way directly from the United States government, with the proceeds credited to the Omaha Tribe. (Compl. at ¶46). Pender and the Plaintiffs' retail liquor businesses are all located within the original boundaries of the Reservation on that land made available for sale to homesteaders by the 1882 Act. (Compl. at ¶'s 38, 42, 43, 44).

It is apparent from the Plaintiffs' Amended Complaint that they have not first exhausted their remedies with any Tribal forum, even though the Tribe's constitution and Tribal Code make the Tribal Court available to Plaintiffs to seek relief. (Defendants' Index of Evidence, Exhibit 1,A, B & C).

### III.
### ARGUMENT

In their Brief in Support of Motion for Temporary Restraining Order the Plaintiffs argue that "[t]he Omaha Reservation was diminished by Congress in 1882 and the land on which the Plaintiffs' businesses are located is not within the Omaha Reservation." (Plaintiffs' Brief, p. 15). Defendants strongly disagree with this legal conclusion, which forms the foundation of the Plaintiffs' entire argument.

Before addressing the tribal exhaustion issue, which is the first order of business, it is important to at least point out how tenuous Plaintiffs' legal basis is for avoiding the Tribe's right to enforce a lawfully enacted liquor ordinance approved by the Department of the Interior, within the traditional boundaries of the Omaha Indian Reservation as established by Congress in the Treaties of 1854 and 1865. Once Reservation boundaries have been established "only Congress

3

can divest a reservation of its land and diminish its boundaries." Solem v. Bartlett, 465 U.S. 463, 470 (1984). And "its intent to do so must be 'plain and clear' . . . ." South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 343 (1998). The Supreme Court has recognized that "Acts declaring surplus land subject to settlement, entry, and purchase," or authorizing the Secretary of Interior to "sell and dispose" of surplus land, without more does "not evince congressional intent to diminish the reservations." 522 U.S. @ 345. Clear language of "cession" of all right and interest in the land in exchange for payment of a "sum certain" is the type of language the Supreme Court has looked for to show a congressional intent to diminish reservation boundaries. 522 U.S. @ 344.

The 1882 Act contains no language of "cession" or sale for a "sum certain", but clearly was simply authorizing the sale of surplus reservation land – not intended to diminish reservation boundaries. None of a series of Supreme Court cases addressing this issue have found diminishment of reservation boundaries over such benign and limited language as that Congress used in the 1882 Act. See United States v. Celestine, 215 U.S. 278 (1909); Seymour v. Superintendent of Washington State Penitentiary, 368 U.S. 351 (1962); Mattz v. Arnett, 412 U.S. 481 (1973); DeCoteau v. District County Court, 420 U.S. 425 (1975); Rosebud Sioux Tribe v. Kneip, 430 U.S. 584 (1977); Solem v. Bartlett, supra.; South Dakota v. Yankton Sioux Tribe, supra.; Hagen v. Utah, 510 U.S. 399 (1994).

Even the June 3, 1989, opinion of a Field Solicitor of the Department of Interior, cited by Plaintiffs as authority for diminishment on page 23 of their Brief in Support of a TRO, states:

> "[T]hat language [of the 1882 Act] fails to demonstrate a clear intent to divest from the reservation all unalotted lands. When compared with the language of other cases dealing with possible diminishment, the Omaha language leads to the conclusion that on the basis of the language alone diminishment was not the intent of Congress."

4

(Emphasis the author's) (Index of Evidence in Support of Plaintiffs' Motion for Temporary Restraining Order, Ex. 10A). Rather, Plaintiffs' have relied heavily on so called "de-facto" evidence of diminishment emphasizing the non-indian character of the land around Pender. However, the Supreme Court has called this the "least compelling [consideration] for a simple reason: Every surplus land Act necessarily resulted in a surge of non-Indian settlement and degraded the 'Indian Character' of the reservation, yet we have repeatedly stated that not every surplus land Act diminished the affected reservation." South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 356 (1998). The Eighth Circuit has echoed the Supreme Court's requirement of looking first, and foremost, to the statutory language for Congressional intent to diminish the boundaries of a reservation, by noting that when such language is absent "exclusive reliance on the third Solem factor [i.e. the population that settled the land] to create a quasi-diminishment [is] totally inappropriate." Duncan Energy v. Three Affiliated Tribes, 27 F.3d 1294, 1298 (8th Cir. 1994).

With that background on the nature of Plaintiffs' claim on the merits, we now turn to why this case should, in the first instance, be presented to a Tribal forum to exhaust the remedies available there.

A. **This Action Should Be Dismissed Because Plaintiffs Have Failed To Exhaust Their Remedies In Tribal Court**

Instead of choosing to pursue their available tribal remedies, the Plaintiffs filed their complaint and motion for a temporary restraining order in federal court. They seek a declaration that the Omaha Tribe's liquor laws – tribal laws – do not apply to them and that they should not have to answer to any tribal enforcement actions that may be undertaken against them. Such claims, despite falling within the Court's federal question jurisdiction, should be first addressed to a tribal forum pursuant to the tribal exhaustion doctrine. Before addressing the merits of

5

Plaintiffs' complaint, this court should dismiss this action and require the Plaintiffs to exhaust their tribal remedies prior to refiling a similar complaint in federal court.

The tribal exhaustion doctrine requires a federal court to give a tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims "when a colorable claim of tribal court jurisdiction has been asserted." Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing, 207 F.3d 21, 31 (1st Cir. 2000), citing El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 483 (1999); National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 856-57 (1985). "The issue of tribal exhaustion is a threshold one because it determines the appropriate forum." Gaming World Intern., Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 849 (8th Cir. 2003).

Although lower federal courts have been requiring exhaustion since the early 1970's, the U.S. Supreme Court first formally articulated the tribal exhaustion doctrine in National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985), in which an insurance company and its insured school district sought injunctive relief in federal court to prevent execution on a default judgment rendered in a tribal court. The tribal court action involved injury to an indian minor when struck on the Crow Reservation by a motorcycle in the school parking lot on land owned by the State of Montana. The tribal court entered a default judgment against the school district. While acknowledging that the district court had federal question jurisdiction to determine whether the tribal court exceeded its jurisdiction, the Court held in a unanimous opinion that exhaustion of tribal remedies is required before the district court could hear challenges to the tribal court's jurisdiction. Id. at 856-57. "Until petitioners have exhausted the

6

remedies available to them in the Tribal Court system . . . it would be premature for a federal court to consider any relief." Id. at 857.

The Supreme Court, in National Farmers Union, recognized the importance of tribal sovereignty and discussed why tribal remedies should be exhausted before seeking the assistance of a federal court. The court stated, in part:

> ". . . [t]he existence and extent of a Tribal Court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.
>
> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." 471 U.S. at 855-856.

This, the court observed, will allow for orderly administration of justice in the Federal Court by allowing a "full record to be developed" in the Tribal Court.

Two years later, the Supreme Court extended the tribal exhaustion doctrine to diversity cases in Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9 (1987), in which an insurance company sought a declaration from the federal district court regarding its duty to defend and its liability on the merits for an accident occurring on the Blackfoot Indian Reservation on land owned by tribal members. The insurance company had failed to persuade a tribal court to dismiss, on jurisdictional grounds, a previously filed lawsuit arising out of the same facts. The insurance company did not appeal the ruling to the tribal appellant court, but instead opted to file the federal suit. The Supreme Court elaborated on the extent of exhaustion required, stating, "[a]t a

minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." Id. at 17, 107 S.Ct. at 977.

The Supreme Court, in Iowa Mutual, again emphasized the federal policy favoring tribal self-government, and the importance of tribal sovereignty in applying the tribal exhaustion rule:

> "Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty . . . . Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or Federal Statute." (Emphasis added) 480 U.S. at 18.

Presumptive jurisdiction in the Tribal Courts, unless withdrawn by Congress, is therefore a key element in applying the doctrine. The Supreme Court has repeatedly affirmed the tribal exhaustion doctrine since National Farmers and Iowa Mutual, and refused to apply it only when there is clearly no tribal jurisdiction over the subject matter. See Nevada v. Hicks, 533 U.S. 353 (2001) (recognizing exception to general rule requiring exhaustion when tribal court clearly lacked jurisdiction over state officials for causes of action relating to performance of official duties); El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473 (1999) (recognizing exception to general rule requiring exhaustion when Congress expressed unmistakable preference for federal forum); Strate v. A-1 Contractors, 520 U.S. 438 (1997) (reiterating that National Farmers and Iowa Mutual recognize the exhaustion requirement as a prudential rule based on comity).

The Eighth Circuit Court of Appeals has carefully followed the tribal exhaustion doctrine as set forth in the Supreme Court cases of National Farmers and Iowa Mutual. For example, in Duncan Energy v. Three Affiliated Tribes, 27 F.3d 1294 (8th Cir. 1994) the Federal District Court granted summary judgment to oil companies challenging the tribe's taxation and employment authority related to their business and property located on the Northeast quadrant of the Fort Berthold Reservation. Officers of the three affiliated tribes on the reservation appealed this decision to the Court of Appeals. In the face of Duncan Energy's argument that exhaustion of

8

tribal remedies "would be both unnecessary and futile", the Eighth Circuit Court held that "exhaustion is necessary as a matter of comity in this case." 27 F.3d at 1299. Again, emphasizing the presumptive jurisdiction in tribal courts, Judge Beam writing for the court stated:

> "Civil jurisdiction over tribal-related activities on reservation land presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or by federal statute. . . . The deference that federal courts afford tribal courts concerning such activities occurring on reservation land is deeply rooted in Supreme Court precedent. Because a federal court's exercise of jurisdiction over matters relating to reservation affairs can impair the authority of tribal courts, the Supreme Court has concluded that, as a matter of comity, <u>the examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court itself</u>." (Emphasis added) 27 F.3d at 1299.

See also <u>Gaming World Int. v. White Earth Chippewa Indians</u>, 317 F.3d 840 (8th Cir. 2003).

The tribal exhaustion doctrine should be considered first, and applied, in this case as well. As will be demonstrated below, Congress has specifically granted jurisdiction to tribal authorities to regulate liquor transactions in Indian country.

### B. **The Omaha Tribe Has Clear Regulatory Authority Over Liquor Transactions, And Therefore Has Presumptive Adjudicatory Jurisdiction**

This is not a situation where Congress has preempted an area of regulation, and tribal exhaustion would not be appropriate. Quite to the contrary, Congress has specifically authorized tribes on indian reservations to regulate liquor transactions, even involving non-tribal members conduct.

Where tribes possess authority to regulate nonmembers' conduct, "[c]ivil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." <u>Iowa Mutual Ins. Co. v. LaPlante</u>, 480 U.S. 9, 18 (1987) (emphasis added). This is a situation where the Omaha Tribe of Nebraska has explicit authority to regulate conduct by members and nonmembers alike when liquor is involved. Accordingly,

9

the Omaha Tribal Court has presumptive adjudicatory jurisdiction to address disputes relating to the application of the Omaha Tribe's liquor laws.

Inherent tribal authority over nonmembers has in some respects been restricted by past Supreme Court decisions, which have cited the dependent status of the tribes as a limiting factor. In <u>Montana v. United States</u>, 450 U.S. 544 (1981) the Court established the rule that, unless Congress has directed otherwise, tribes lack inherent civil *regulatory* authority over the conduct of nonmembers on non-Indian owned land within a reservation, unless it falls within one of two exceptions involving consensual relationships or conduct that threatens or directly affects the political integrity, economic security, health, or welfare of the tribe. 450 U.S. at 564-67. The Supreme Court later extended the <u>Montana</u> analysis to a case involving a tribe's civil *adjudicatory* jurisdiction in <u>Strate v. A-1 Contractors</u>, 520 U.S. 438 (1997).

Unlike <u>Montana</u> and other cases relying solely on a tribe's inherent sovereignty to support civil jurisdiction, this case involves an explicit congressional delegation of civil regulatory authority to tribes over the conduct of nonmembers. Federal Indian liquor laws comprehensively regulate liquor transactions in Indian country. See, e.g., 18 U.S.C. §§ 1154, 1156, 3113, 3448, and 3669. However, 18 U.S.C. § 1161 acknowledges compliance with these laws if the "act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Interior, and published in the Federal Register.[2]

The Omaha Tribe's authority to regulate transactions involving liquor within its Indian country is clear under 18 U.S.C. § 1161 and the court decisions interpreting it. Because a tribe's

---

[2]    The Supreme Court has interpreted 18 U.S.C. § 1161 as a delegation of authority to both the states and tribes to regulate and license liquor transactions. See <u>Rice v. Rehner</u>, 463 U.S. 713 (1983) (finding Congress delegated authority over liquor transactions to states); <u>United States v. Mazurie</u>, 419 U.S. 544 (1975) (finding Congress delegated authority over liquor transactions to tribes).

10

civil adjudicatory jurisdiction is coextensive with its civil regulatory jurisdiction, as found by the Supreme Court in Strate, the Omaha Tribe accordingly has presumptive adjudicatory jurisdiction over the claims like those brought by Plaintiffs concerning enforcement of the Omaha Tribe's liquor laws. The Eighth Circuit Court of Appeals recognized as much in City of Timber Lake v. Cheyenne River Sioux Tribe, in which the court found valid a tribal court's restraining order entered against non-Indian bar operators for activities on fee land owned by non-Indians. 10 F.3d 554 (8th Cir. 1993).

Further, although the express congressional delegation of authority to the Omaha Tribe over Plaintiffs' conduct takes this case out of the Montana general rule outlined above, the applicability of the tribal liquor laws in question would withstand the Montana analysis by falling within the second exception. Transactions involving liquor within the Omaha Indian Reservation pose a direct threat to the health and welfare of the Omaha Tribe, and therefore the Omaha Tribe retains inherent authority to regulate all such transactions. Congress's historical and pervasive regulation of liquor transactions in Indian country supports this notion. Plaintiffs even concede that the sale of alcohol within a reservation's boundaries could be the type of activity that directly affects the political integrity, economic security or health or welfare of the tribe. (Pl. Brief in Support of Motion for TRO, p. 15).

Whether viewed as a delegation of federal authority or as inherent sovereignty, the Omaha Tribe has regulatory jurisdiction over liquor transactions within its Indian country. Accordingly, the Omaha Tribal Court clearly has presumptive adjudicatory jurisdiction to address disputes relating to the application of the Omaha Tribe's liquor laws and this court must therefore, under established precedent, require Plaintiffs to first exhaust their remedies in Omaha Tribal Court.

It is anticipated that Plaintiffs will attempt to trump the Tribal Exhaustion Doctrine by arguing that the Tribal Courts have no jurisdiction since the City of Pender is not on the Reservation. This, of course, is putting the "cart before the horse" by avoiding their burden of proof on that issue, and runs totally contra to the presumption of tribal jurisdiction and the rule that "[a] federal court should 'stay [] its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction.'" <u>Gaming World Intern., Ltd. v. White Earth Band of Chippewa Indians</u>, 317 F.3d 840, 849 (8th Cir. 2003). The Plaintiffs can make their case on diminishment in Tribal Court where that court can "in the first instance", as the Supreme Court states in <u>National Farmers Union</u>, carefully examine its own sovereignty and "the extent to which that sovereignty has been altered, divested, or diminished." 471 U.S. at 855-856. This is not a novel concept of jurisprudence and is consistent with the fundamental rule of law that "[a] court has jurisdiction to determine its own jurisdiction." <u>U. S. v. Haskins</u>, 479 F.3d 955, 957 (8th Cir. 2007).

  C.  <u>**Tribal Remedies Are Available To The Plaintiffs**</u>

The Plaintiffs had a choice when they filed this federal lawsuit. They could have chosen to request relief from the Director of Liquor Control under Title 8 of the Omaha Tribal Code, the Alcoholic Beverage Control Title ("ABCT"). (Pl. Compl., Exhibit 1). They could have chosen to request a meeting with the Omaha Tribal Council. They could have chosen to file their complaint in Omaha Tribal Court.[3] Indeed, they could have chosen to take advantage of the Bill of Rights

---

[3] The Omaha Tribe of Nebraska established its current tribal court system during 1981 and 1982. The Tribe approved an amendment to the Constitution of the Omaha Tribe of Nebraska on December 30, 1981, which amendment added Article X, "Tribal Courts," and Article XI, "Bill of Rights." Article X authorizes the tribal courts, and Section 6 of Article X confers on the tribal courts general subject matter jurisdiction over criminal and juvenile matters, and authorizes the Tribal Council to expand the jurisdiction of the tribal courts by appropriate legislation concerning non-criminal cases and controversies. This was done by the addition of Title 1 of the Omaha Tribal Code (2003). Appellate review of the tribal court's decision is also available by virtue of Article X of the Constitution and Title 1 of the Omaha Tribal Code. See Defendants' Index of Evidence.

in the Constitution of the Omaha Tribe of Nebraska prohibiting the Omaha Tribe from denying the equal protection of its laws or depriving anyone of liberty or property without due process of law. (Defs' Ind. of Ev., Ex. 1A).

Chapter 4 of Title 1 to the Omaha Tribal Code addresses the jurisdiction of the tribal courts. Section 1-4-2 confers territorial jurisdiction on the tribal courts and states in part:

> "(a) The Jurisdiction of the Courts of the Omaha Tribe of Nebraska shall extend to the territory within the exterior boundaries of the Omaha Indian Reservation (including Blackbird Bend and other tribal land located east of the Missouri River) as set forth in the Omaha Treaty of March 16, 1854, as amended by the Treaty of March 6, 1865, and to such other lands without these boundaries as may have been or may hereafter be added to the Reservation or held in Trust for the Tribe under any law of the United States or otherwise."

Section 1-4-3(b) defines the extent of the tribal courts' personal jurisdiction, which includes jurisdiction over "any person residing, located or present within the Reservation for any civil cause of action." (Defs' Ind. of Ev., Ex. 1B).

The Omaha Tribal Council specifically sought to provide a tribal remedy to persons such as the Plaintiffs. Section 1-4-1 of the Omaha Tribal Code states:

> "It is hereby declared as a matter of Tribal policy, that the public interest and the interests of the Omaha Tribe of Nebraska demand that the Tribe provide itself, its members, **and other persons living within the territorial jurisdiction of the Tribe as set forth in Section 1-4-2 of this Code,** with an effective means of redress in civil proceedings against members and non-Tribal members who, through either their residence, presence, business dealings, other actions or failure to act, or other significant minimum contacts with this Reservation and/or its residents, incur civil obligations to the Tribe or to persons or entities entitled to the Tribe's protection, or through criminal prosecution of Indians committing offenses against the Tribe within its territorial jurisdiction. The jurisdictional provision of this Code, to insure maximum protection for the Tribe, its members and other residents of the Reservation, shall be applied equally to all persons, Indians, and non-Indians alike, to the extent not prohibited by Federal law." (Emphasis added)

...
...
...

Despite the several choices of tribal remedies available to the Plaintiffs, they have chosen to ignore them, and proceeded directly to this Court for relief. This Court should now require them to exhaust their tribal remedies as mandated by the Supreme Court and Eighth Circuit cases.

## IV.
## CONCLUSION

This is an action that falls directly within the Tribal Exhaustion Doctrine. The subject matter of the action involves the enforcement of a duly authorized and adopted tribal liquor ordinance, an area of regulation which Congress has specifically recognized as within the province and sovereignty of tribal self government.

The Plaintiffs arguments in this court seek to avoid the tribe's lawful enforcement of its liquor ordinance by essentially claiming that the Omaha Tribe of Nebraska has no regulatory jurisdiction over these plaintiffs. The United States Supreme Court has stated, when the subject matter is clearly within the tribe's authority to regulate, it has presumptive jurisdiction to do so and tribal courts should be given the first opportunity to express its views on the controversy before federal court jurisdiction is invoked. In this manner, the tribe's sovereignty is protected and the strong policies favoring tribal self-government and self-determination is promoted.

Because Congress has specifically delegated regulation of the subject matter of this litigation to Indian Tribes, they have presumptive jurisdiction to determine their own tribal court jurisdiction even if that involves a challenge to reservation boundaries. Any effort by Plaintiffs to circumvent the exhaustion rule because reservation boundaries are at issue should therefore clearly fail.

We therefore respectfully urge this court to dismiss this action because the Plaintiffs have failed to exhaust their tribal remedies. Alternatively, if the court deems it more appropriate, it can

stay this action for a reasonable period of time pending the Plaintiffs efforts to seek relief with the Omaha Tribal Courts.

Dated: June 18, 2007.

MITCH PARKER, In his official capacity as Chairman of the Omaha Tribal Council, BARRY WEBSTER, In his official capacity as Vice-Chairman of the Omaha Tribal Council, AMEN SHERIDAN, In his official capacity as Treasurer of the Omaha Tribal Council, RODNEY MORRIS, In his official capacity as Secretary of the Omaha Tribal Council, ORVILLE CAYOU, In his official capacity as Member of the Omaha Tribal Council, ELEANOR BAXTER, In her official capacity as Member of the Omaha Tribal Council, and ANSLEY GRIFFIN, In his official capacity as Member of the Omaha Tribal Council and as the Omaha Tribe's Director of Liquor Control, Defendants.

By: /s/ Lyman L. Larsen
Lyman L. Larsen - 12398
Don Dworak - 21710
Patricia Zieg - 14662
Stinson Morrison Hecker LLP
1299 Farnam St.
Omaha, NE 68102
Phone: (402) 342-1700
Fax: (402) 930-1701
Attorneys for the Defendants
llarsen@stinson.com
ddworak@stinson.com
pzieg@stinson.com
    and
Maurice Johnson – 19419
Benjamin W. Thompson – 22025
*Attorneys for Defendants*
Johnson Thompson LLP
10844 Old Mill Rd, Suite 4
Omaha, NE 68154
Phone: (402) 934-0198
Fax: (402) 934-0714
mjohnson@johnsonthompson.com
bthompson@johnsonthompson.com

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 18th day of June, 2007, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all CM/ECF participants.

/s/ Lyman L. Larsen
Lyman L. Larsen
