IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE STATE OF NEBRASKA

| | | |
|---|---|---|
| RICHARD M. SMITH, et al. | ) | CASE NO. 4:07-cv-03101 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S REPLY TO** |
| | ) | **PLAINTIFFS OPPOSITION** |
| MITCH PARKER, et al. | ) | **TO MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiffs' entire Opposition Brief, and supporting arguments, are grounded upon the premise that the City of Pender is not located within the boundaries of the Omaha Indian reservation which, of course, is the ultimate question presented by their lawsuit. Plaintiffs argue, however, that the Defendants and necessarily the court, are bound to accept this fact as true because the Plaintiffs have alleged it as a fact in the Petition and well pleaded facts must be accepted as true in the face of a Motion to Dismiss.

As will be discussed in more detail below, the assumption upon which Plaintiffs base their opposition is logically and legally flawed. While this is a Motion to Dismiss, it is a motion based upon principles of comity and abstention seeking a dismissal without prejudice, and not a final adjudication of the merits. Indeed, it is that very legal conclusion regarding the location of the City of Pender in relation to reservation boundaries which must be adjudicated first in tribal court in order to satisfy the tribal exhaustion rule of federal common law. If Plaintiffs argument were accepted as valid, every plaintiff in federal court could simply plead around the tribal

1

exhaustion rule and thereby render it a moot doctrine. Obviously, such a result would totally defeat the purpose of the rule.

What is undisputable is that Congress has delegated to the Omaha Tribe of Nebraska, and other Indian tribes, the authority to regulate liquor transactions on the reservation. This is a specific federal grant of authority avoiding most of the typical issues raised when tribal court jurisdiction is in question.

It is also undisputed, as recognized by Plaintiffs' own complaint and other contemporaneous filings, that Pender is located within the original boundaries of the Omaha Indian Reservation as established by virtue of the Treaty of 1854 between the Omaha Tribe and the United States. If the boundaries remain unchanged, as Defendants strongly contend, tribal court clearly has jurisdiction and the right to enforce its liquor control ordinance. When a tribal court's jurisdiction is challenged, "the examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court itself." Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold, 27 F.3d 1294, 1299 (8th Cir. 1994).

## ARGUMENT

I. **THE ALLEGATION THAT THE PLAINTIFFS, AND THE CITY OF PENDER, ARE LOCATED OUTSIDE OF THE OMAHA RESERVATION CANNOT BE TAKEN AS TRUE FOR PURPOSES OF DEFENDANTS' MOTION TO DISMISS.**

There are several reasons why the rule cited by Plaintiffs in their Opposition Brief does not apply here. First, the nature of the motion is such that the rule is not strictly applicable. Second, the rule does not apply to allegations that amount to conclusions of law or constitute the ultimate fact to be litigated. Third, it does not apply when other allegations or exhibits incorporated in the complaint contradict the one Plaintiff relies upon.

**(a)   Nature of the Motion to Dismiss**.

The Motion to Dismiss filed by the Defendants is not a typical 12(b)(6) motion which challenges the Plaintiffs' allegations on the merits. Rather, it is a motion which challenges the propriety of the forum due to lack of exhaustion of other remedies. This type of motion is generally considered one of abatement. See, e.g., Ritza v. International Longshoremen's and Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). Abatement is not one of the grounds specifically referred to in a literal reading of Federal Rule of Civil Procedure 12(b), however it involves matters of "judicial administration" and lies within the "inherent power of a court to regulate actions pending before it." 837 F.2d at 369. In these types of motions any factual issues are resolved by the trial court, and "no presumptive truthfulness attaches to Plaintiffs' allegations. . . ." (Internal quotes omitted). 837 F.2d at 369." See also, Vol. 5C, Wright & Miller, *Federal Practice and Procedure*, § 1363, p. 106 (3rd Ed.).

We know that the issue of tribal exhaustion is deemed a "threshold one because it determines the appropriate forum." Gaming World Intern., Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 849 (8th Cir. 2003). A motion to dismiss seems to be the most appropriate procedural method to do this. We have specifically referenced our request for dismissal as one pursuant generally to Rule 12(b), and as a threshold issue under the federal common law, as well as pursuant to Rule 12(b)(6). To the extent Rule 12(b)(6) is pled, it is done so because Plaintiffs failed to plead exhaustion of tribal remedies. In any event, the motion is clearly one in which it is not appropriate to accept the allegations of Plaintiffs' complaint as conclusive, or even presumptive. To do so would undermine this court's authority to address this threshold question pertaining to proper judicial administration.

**(b)** **The Rule Does Not Apply to Conclusory Allegations.**

When a motion to dismiss a complaint on its merits is filed the court will "construe the complaint liberally and accept all facts pleaded therein as true, but reject conclusory or catch-all assertions of law and unwarranted inferences." In re Cerner Corp. Securities Litigation, 425 F.3d 1079, 1083 (8th Cir. 2005). See also, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003); Great Plains Trust Co. v. Union Pacific RR, F.3d, 2007 WL 1855643 (8th Cir. 2007).

The Plaintiffs base their claim that Pender is not on the Omaha Indian Reservation on an 1882 Act of Congress:

> "As a result of the 1882 Act, Pender is not part of any federally recognized Indian Reservation. (First Amended Complaint, para. 48)"

Whether that is the result of an Act of Congress or not is certainly not a fact issue, but one of law, or at most a mixture of law and fact which is conclusory. Such allegations cannot be accepted as true in considering a motion to dismiss. And, that is precisely what the Plaintiffs are asking this court to do.

**(c)** **Allegations Contradicted by Other Facts.**

It is also an accepted proposition that "[t]he District Court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading." Vol. 5C, Wright & Miller, *Federal Practice and Procedure*, § 1363, p. 120-121 (3rd. Ed.).

Plaintiffs' base their claim that Pender is not on the reservation on the 1882 Act of Congress which authorized the sale of surplus land "lying West of the right-of-way granted by said Indians to the Sioux City and Nebraska Railroad Company . . . ."[1] However, the 1882 Act itself not only does not state that the intent is to extinguish this portion of the reservation, but it

---

[1] See introductory paragraph of the Act, Ex. 13 to Plaintiffs' Motion for a Temporary Restraining Order.

4

contains language which is directly or inferentially contradictory to any intent to diminish the Western boundaries of the reservation.

For example, the Omaha Tribe acquired their right to this land as a reservation under the Treaties of 1854 and 1865, and Section 4 of the 1882 Act guarantees that "any right in severalty acquired by any Indian under existing treaties shall not be affected by this Act." And, Section 8 of the Act guaranties that the Indians could select allotments of land "in any part of said Reservation either East or West of said right of way mentioned in the first section of this Act." (Emphasis added). These statements clearly suggest that the reservation and its boundaries remained in tact under this Act. As the Supreme Court reminds us in Solem v. Bartlett, 465 U.S. 463, 470 (1984), "[o]nce a block of land is set aside for an Indian reservation and no matter what happens to the title of individual plots within the area, the entire block retains its reservation status until Congress explicitly indicates otherwise."

One of Plaintiffs' own exhibits offered in support of their Motion for a Temporary Restraining Order opined that "on the basis of the language alone [of the 1882 Act] diminishment was not the intent of Congress." (Emphasis the authors).[2]

Moreover, a Nebraska statute passed in 1889, only a few years after passage of the 1882 Act which Plaintiffs claim diminished the reservation's western boundaries, defines Thurston county's western boundary as "the west line of the Winnebago and Omaha Indian reservations." Neb. Rev. Stat. § 22-187. This judicially noticeable fact places Pender on the Omaha Indian Reservation and contradicts any claim of change to reservation boundaries.[3]

---

[2] See Plaintiffs' Ex. 10A, Opinion of Field Solicitor of Department of Interior, June 3, 1989. The opinion was no doubt presented by Plaintiffs for its statement that a court could find "de facto diminishment" based on facts outside the language of the 1882 Act, a conclusion with which Defendants strongly disagree.

[3] A federal court "clearly [has] a right to take judicial notice of . . . state statutes." U.S. v. One (1) 1975 Thunderbird, Etc., 576 F.2d 834, 836 (10th Cir. 1978).

5

These contradictions alone undermine any presumption of truth which could attach to the allegation that the Plaintiffs' businesses are not situated on the reservation.

## II.  THE OMAHA TRIBAL COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS

The Plaintiffs contend in Point II of their Brief that the Omaha Tribal Court lacks jurisdiction over Plaintiffs' claims, citing principally the case of <u>Nevada v. Hicks</u>, 533 U.S. 353 (2001). Plaintiffs suggest that <u>Nevada</u> somehow "flatly rejected" arguments made by Defendants based in part on an earlier landmark Supreme Court case which first articulated the tribal exhaustion rule, and an Eighth Circuit Case which followed it.[4] The <u>Nevada</u> case does not, however, in any way change or undermine the force of those cases, or our arguments.

<u>Nevada v. Hicks</u> presents the question "whether a tribal court may assert jurisdiction over civil claims against state officials who entered tribal land to execute a search warrant against a tribal member suspected of having violated state law outside the reservation." 533 U.S. at 355. The majority of the court answered this question "no". In order to do so, the court generally followed the principles set forth in <u>Montana v. United States</u>, 450 U.S. 544 (1981). That case dealt with the issue of when Indian tribes have regulatory authority over non-members, generally within the confines of a reservation or indian country. The <u>Nevada</u> Court determined that jurisdiction over state officers in that case was not essential to tribal self-government, and there was no specific federal grant of authority to the tribe to regulate the conduct of these officers in serving a warrant. The court concluded that because it was "clear . . . that tribal court lacked jurisdiction over state officials or causes of action relating to their performance of official duties .

---

[4]  See Plaintiffs' Opposition Brief, p.4, nt. 2. The Supreme Court case referred to is <u>National Farmers Mutual v. Crow Tribe of Indians</u>, 471 U.S. 845 (1985) and <u>Duncan Energy v. Three Affiliated Tribes</u>, 27 F.3d 1294 (8th Cir. 1994).

6

. ." adherence to the tribal exhaustion requirement "would serve no purpose other than delay. . . ." 533 U.S. at 369.

The case at bar is markedly different from Nevada. There is a specific congressional grant of authority to tribes to regulate liquor transactions by non-tribal members on reservation land. See, City of Timber Lake v. Cheyenne River Sioux Tribe, 10 F.3d 554 (8th Cir. 1993). In Nevada there was no congressional grant of authority to tribes to regulate the activities of state law enforcement officers on an Indian Reservation. Furthermore, there was no dispute regarding any of the pivotal facts in that case. In the case at bar, Plaintiffs' claims hinge on proving that reservation boundaries have changed. In doing so, however, Plaintiffs want to give themselves the benefit of a conclusive presumption. This runs contra to the Supreme Court's admonition that the policy of tribal self-government "favors a rule that will provide the forum whose jurisdiction is being challenged [tribal courts] the first opportunity to evaluate the factual and legal basis for the challenge." National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845, 855-856 (1985). See also, Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9 (1987).[5]

Continuing their indulgence in the conclusive presumption that Pender is not on reservation land, Plaintiffs attempt to distinguish Defendants' authorities on the basis that all of the activities involved occurred on tribally-owned or reservation land. However, even if the location of the activities is affected by the resolution of a boundary dispute defining the limits of the reservation, the result is the same. The subject matter of the dispute [liquor regulation] is

---

[5] Plaintiffs are critical of Defendants for relying on the National Farmers Union case which predates Nevada v. Hicks. However, since Nevada was decided in 2001, the Eighth Circuit has continued to apply the tribal exhaustion rule relying on this case as one of the Supreme Court's fundamental expressions of that rule. See, e.g., Gaming World Int. v. White Earth Chippewa Ind., 317 F.3d 840, 849-850 (8th Cir. 2003); Prescott v. Little Six, Inc., 387 F.3d 753, 756-757 (8th Cir. 2004); Longie v. Spirit Lake Tribe, 400 F.3d 586, 590 (8th Cir. 2005).

7

within the inherent and delegated jurisdictional power of the Omaha tribe, and a tribal court should be the first to address the limit of its own jurisdiction.

The case of <u>Enlow v. Moore</u>, 134 F.3d 993 (10th Cir. 1998) illustrates that the principle of tribal exhaustion still applies even when the boundaries of the reservation defining the limits of its jurisdiction are in dispute. In that case, there was a boundary dispute between a non-Indian whose land was situated outside Indian Country, and three members of the Muscogee Nation whose land was in Indian Country and restricted against alienation. The Indian owners filed a quiet title action against the non-Indian in tribal court. Enlow, the non-Indian owner filed a motion to dismiss claiming tribal court lacked jurisdiction over the action. The motion was denied and an interlocutory appeal was taken to the Supreme Court of the Muskogee Nation which affirmed the tribal court's decision.

In the meantime Enlow filed a quiet title action in state court, and during the pendency of that action filed the instant action in federal court seeking an injunction against the tribal court Judge from assuming jurisdiction. Enlow argued to the federal court that the disputed strip of boundary land was not in Indian Country, therefore the tribal courts had no jurisdiction. The federal court dismissed the case because tribal remedies had not been exhausted. On appeal, the Tenth Circuit Court of Appeals reversed and remanded the case to district court for further proceedings, not because it disagreed with the propriety of tribal exhaustion in this case, but because both the trial court and the Supreme Court of the Muskogee Nation had already ruled on the jurisdictional dispute and the merits of the case by holding that the "'property in question is located within the boundaries of the Muskogee (Creek) Nation and that the property is Indian Country and that the [tribal] District Court does have jurisdiction over the parties . . . .'" 134 F.3d at 996.

8

The Tenth Circuit, however, went on to discuss the applicability of the tribal exhaustion doctrine to this case, even though the policy behind that doctrine had already been fulfilled. The court reasoned:

> "Indian tribes do, however, 'retain inherent sovereign power to exercise some forms of civil jurisdiction over non-indians on their reservations' . . . This authority over non-indians on reservation lands is an important part of tribal sovereignty. LaPlante, 480 U.S. at 18. Thus, civil jurisdiction over non-indians on reservation lands 'presumptively lies in the tribal courts unless affirmatively limited by specific treaty provision or federal statute.' . . . As these cases make clear, in civil disputes involving a non-Indian and Indian land, where no treaty provision or federal statute divests the tribal court of jurisdiction, the tribal court may properly exercise jurisdiction. See LaPlante, 480 U.S. at 18. Therefore, in the present case, both tribal court jurisdiction and the merits of the quiet title action turn on the location of the disputed land . . . .[T]he highest court of the Muskogee (Creek) Nation not only determined that jurisdiction in the tribal court was proper but also, in effect, determined the merits of the case by holding that the disputed property was Indian land."

The Court of Appeals therefore ordered the district court, on remand to review the tribal court's finding that the disputed property lies within Indian Country, giving deference to its factual findings by applying a "clearly erroneous" standard. 134 F.3d at 997.

The Enlow court recognized that sometimes the "resolution of jurisdictional questions may be intertwined with the merits of the case" such as in the case of a disputed boundary line. 134 F.3d at footnote 5, 997. Nevertheless, it is quite clear that if the tribal court had not first addressed this issue, the Tenth Circuit would have ordered the district court to require the Plaintiff to first exhaust his tribal remedies.

A Colorado Federal District Court certainly recognized Enlow as authority for the proposition that the tribal exhaustion rule applies even where a reservation boundary dispute is involved. In Petrogulf Corporation v. Arco Oil & Gas Company, 92 F.Supp.2d 1111 (D.C. Colo. 2000), the court dismissed the action and ordered plaintiffs to exhaust their remedies in tribal

9

court in a case involving a dispute over mining interests which straddled the boundaries of an Indian Reservation. In so doing the court relied on Enlow and discussed its holding as follows:

> "In a similar case, albeit one addressing the jurisdiction of tribal courts and not the tribal exhaustion rule, the Tenth Circuit held that 'in [boundary] disputes involving a non-Indian and Indian land, where no treaty provision or federal statute divests the tribal court of jurisdiction, the tribal court may properly exercise jurisdiction.' Enlow, 134 F.3d at 966 (citing LaPlante, 480 U.S. at 18). Enlow teaches that the comity concerns identified in National Farmers counsel against a federal court addressing boundary disputes involving Indian land before a tribal court has had an opportunity to do so."

Petrogulf Corp., Opinion at p. 1115. The court concluded that "[b]y permitting the tribal court to first determine its own jurisdiction, a federal court that may eventually be called upon to review this determination will have at its disposal a fully developed tribal court record from which to evaluate any challenges to that jurisdiction." Petrogulf Corp., opinion at p. 1118.

Similarly, in this case, a boundary dispute does not disqualify the applicability of the tribal exhaustion doctrine, particularly when it is imminently apparent that the subject matter of the litigation is within the regulatory power of the tribe through a federal grant of authority.

### III. EXHAUSTION OF TRIBAL COURT REMEDIES WOULD NOT BE FUTILE, AND TRIBAL COURT JURISDICTION IS BASED ON A FEDERAL GRANT OF AUTHORITY

Plaintiffs argue that requiring them to exhaust their remedies in tribal court would be futile and result in needless delay. In doing so they again resort to their continuing theme that the tribe is attempting to regulate activities occurring outside the Western boundaries of the reservation, the original boundaries having been erased by the 1882 Act. This completely overlooks the heavy burden of proof Plaintiffs must undertake to prove a change to the

boundaries of the Omaha Indian Reservation.[6] It also overlooks, and would violate a federal statute intended to protect Indians and their property. Congress in 25 U.S.C. § 194 provides:

> "In all trials about the right of property in which an Indian may be a party on one side, and a white person on the other, the burden of proof shall rest upon the white person, whenever the Indian shall make out a presumption of title in themselves from the fact of previous possession or ownership."

The Defendants in this case are all members of the Omaha Indian Tribe, and it is undisputed that the land on which the Plaintiffs have their liquor businesses is within the original boundaries of the Omaha Indian Reservation. The presumption of ownership is therefore with Defendants on all issues, including the exhaustion of remedies issue.

### (a)  Exhaustion of Tribal Remedies in This Case Would Not be Futile.

The Plaintiffs on page 10 of their Brief argue that the "futility of proceeding in tribal court is highlighted by the fact that a tribal court's ruling on Pender's status will have absolutely no effect on this litigation," and the Plaintiffs will start again "from scratch" in this court. If that were the governing criteria, virtually every case in which the tribal exhaustion rule is invoked would be futile because the federal courts will always have the final word on the extent of a tribal court's jurisdiction.

The tribal court's consideration of its own jurisdiction is not a meaningless exercise. The federal courts give deference to a tribal court's findings, not only with regard to tribal law, but on issues of fact. The Plaintiffs cite <u>Prescott v. Little Six, Inc.</u>, 387 F.3d 753 (8th Cir. 2004) to emphasize that "some deference" may be given to tribal courts on issues of tribal law, but there is no deference accorded on a ruling involving federal law. This is accurate as far as it goes, but, as

---

[6] It is significant to note that even in the case of reservations created by Executive order changes can only be made by Congress: "Changes in the boundaries of reservations created by Executive order, proclamation, or otherwise for the use and occupation of Indians shall not be made except by Act of Congress." 25 U.S.C. § 398d.

11

Plaintiffs did not mention, Prescott also recognizes that "a tribal court's findings of fact are reviewed under a 'deferential, clearly erroneous standard.'" 387 F.3d at 757.

At this point it is difficult to ascertain what mix of findings may be involved in a final ruling by a tribal or federal court. It could involve a combination of federal and tribal law, and findings of facts. Certainly, we believe that the 1882 Act, as a matter of law, does not diminish the reservation boundaries. However, the Plaintiffs have disclosed the nature of their case in seeking a temporary restraining order, as involving mixed questions of law and fact. For example, in their arguments based upon de facto diminishment, the Plaintiffs make a variety of allegations regarding the Omaha Tribe's exercise of control, or lack thereof, over land West of the railroad right-of-way, and how and when the area lost its Indian character. Should these, and other claims by the Plaintiffs, become relevant they will not go unchallenged and certainly will involve a mix of federal, tribal and factual issues evidenced by historical maps, letters, histories and other documents. As the Supreme Court in National Farmers Union recognized, the tribal court should have first crack at deciding its own jurisdiction. This can involve "the extent to which . . . [its] sovereignty has been altered, divested, or **diminished**, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." (Emphasis added). National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. at 855-856.

Moreover, Plaintiffs fail to recognize that if their argument is sufficiently supported legally and factually, they have an opportunity to prevail in tribal court as well as federal court. They do not claim that tribal court's are inadequate or incompetent, which the Supreme Court of the United States recognizes is "not among the exceptions to the exhaustion requirement . . . ." Iowa Mutual Ins. Co. v. LaPlante. 480 U.S. 9, 19 (1986) On the other hand, the tribal court may

also rule against Plaintiffs and allow the Omaha Tribe to proceed to enforce its lawfully enacted tribal ordinance, avoiding unnecessary delay to the Omaha Tribe. Therefore, deferring initially to tribal court under the exhaustion doctrine is far from meaningless or futile, for either the Plaintiffs or the Defendants.

      **(b)**     **A Federal Grant Provides for Tribal Governance of Non-Members Conduct Involving Liquor Transactions.**

Finally, Plaintiffs argue that there is no federal grant that provides for tribal governance of non-members conduct on land governed by Montana's main rule.[7] The Montana case dealt with the issue of tribal regulation of hunting and fishing within a reservation, and generally what types of activities of non-members an Indian tribe is authorized to regulate. As a general proposition, "the inherent sovereign powers of an Indian tribe do not extend to the activities of non-members of the tribe." 450 U.S. at 565. But, a tribe can regulate non-members involved in consensual relationships with the tribe (i.e. contracts), or when the conduct has some direct effect on the tribe's political and economic condition, or other aspects of its health and welfare. 480 U.S. at 565 to 566. Therefore, Montana focuses on the nature of the activity on the reservation, not whether there is or is not a boundary dispute determinative of the tribe's jurisdiction. The Montana rule is therefore something of a red herring in this case because the tribe clearly has the authority, by virtue of a federal grant, to regulate the type of activity at issue, i.e. liquor transactions on the reservation. City of Timberlake v. Cheyenne River, 10 F.3d 554 (8th Cir. 1993). See also, 18 U.S.C. § 1161 as interpreted by United States v. Mazurie, 419 U.S. 544 (1975) and Rice v. Rehner, 463 U.S. 713 (1983).

Again, what Plaintiffs are attempting to do is avoid the policy and purpose behind the tribal exhaustion rule by conclusively presuming that the activity occurred outside the boundaries

---

[7]     Montana v. United States, 450 U.S. 544 (1981).

13

of the reservation. As the Federal District Court in Petrogulf stated, in considering the applicability of the tribal exhaustion rule, "[i]f sovereignty means anything, it must include the power to determine the extent of rights in property over which a governmental entity claims jurisdiction." Petrogulf Corp. v. Arco Oil and Gas Co., 92 F.Supp.2d 1111 (D. C. Colo. 2000).

## CONCLUSION

This case is one in which the tribal exhaustion rule should clearly be applied. It involves an area in which the Omaha Tribe is specifically authorized by Congress to regulate conduct involving both Indians and non-Indians on the Omaha Reservation. The Plaintiffs attempt to avoid the doctrine by pleading that the activity regulated is outside the boundaries of the Omaha Indian Reservation, and then contend that this Court and the Defendants must accept this allegation as conclusive.

It is undisputed that the activity at issue occurred within the original boundaries of the Omaha Indian Reservation. Only Congress can change these boundaries, and there is no congressional enactment to which the Plaintiffs can point which clearly makes such a change. The tribal exhaustion rule is based upon a policy of supporting tribal self-government and self-determination, and if any issue hits at the heart of this policy it is the right of a sovereign to define the limits of its authority and boundaries of its territories.

The federal courts will have the opportunity to review these issues, with the benefit of a complete record made before the tribal courts, and furthermore the policy of the tribal exhaustion rule will be preserved along with Plaintiffs' rights to challenge the tribal sovereign's ultimate decision should it be against Plaintiffs' interest.

We therefore respectfully urge this court to dismiss this action to allow tribal remedies to be exhausted.

Dated: August 3, 2007.

MITCH PARKER, In his official capacity as Chairman of the Omaha Tribal Council, BARRY WEBSTER, In his official capacity as Vice-Chairman of the Omaha Tribal Council, AMEN SHERIDAN, In his official capacity as Treasurer of the Omaha Tribal Council, RODNEY MORRIS, In his official capacity as Secretary of the Omaha Tribal Council, ORVILLE CAYOU, In his official capacity as Member of the Omaha Tribal Council, ELEANOR BAXTER, In her official capacity as Member of the Omaha Tribal Council, and ANSLEY GRIFFIN, In his official capacity as Member of the Omaha Tribal Council and as the Omaha Tribe's Director of Liquor Control, Defendants.

/s/ Lyman L. Larsen _____

By:  Lyman L. Larsen - 12398
Don Dworak - 21710
Patricia Zieg - 14662
Stinson Morrison Hecker LLP
1299 Farnam St.
Omaha, NE 68102
Phone: (402) 342-1700
Fax: (402) 930-1701
Attorneys for the Defendants
llarsen@stinson.com
ddworak@stinson.com
pzieg@stinson.com

and

Maurice Johnson – 19419
Benjamin W. Thompson – 22025
*Attorneys for Defendants*
Johnson Thompson LLP
10844 Old Mill Rd, Suite 4
Omaha, NE 68154
Phone: (402) 934-0198
Fax: (402) 934-0714
mjohnson@johnsonthompson.com
bthompson@johnsonthompson.com

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 3rd day of August, 2007, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all CM/ECF participants.

/s/ Lyman L. Larsen
Lyman L. Larsen