IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RICHARD M. SMITH, DONNA SMITH, DOUG SCHRIEBER, SUSAN SCHRIEBER, RODNEY A. HEISE, THOMAS J. WELSH, JAY LAKE, JULIE LAKE, KEITH BREHMER, RON BRINKMAN, and VILLAGE OF PENDER, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 4:07CV3101 |
| v. | ) ) | |
| MITCH PARKER, in his official capacity as Chairman of the Omaha Tribal Council, BARRY WEBSTER, in his official capacity as Vice-Chairman of the Omaha Tribal Council, AMEN SHERIDAN, in his official capacity as Treasurer of the Omaha Tribal Council, RODNEY MORRIS, in his official capacity as Secretary of the Omaha Tribal Council, ORVILLE CAYOU, in his official capacity as Member of the Omaha Tribal Council, ELEANOR BAXTER, in her official capacity as Member of the Omaha Tribal Council, and ANSLEY GRIFFIN, in his official capacity as Member of the Omaha Tribal Council and as the Omaha Tribe's Director of Liquor Control, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) | |

This is an action[1] brought by several liquor retailers ("Liquor Retailers") operating in Pender, Nebraska, against members of the Omaha Tribal Council (the "Tribe"), who have attempted to enforce the Tribe's liquor-license and tax scheme on the Liquor Retailers' businesses. The Liquor Retailers claim they are not located within the boundaries of the Omaha Reservation or "Indian country," and therefore are not subject to the Tribe's jurisdiction.[2] (Filing 55, Second Amended Complaint.)[3]

The State of Nebraska moves to intervene in this lawsuit as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, to permissively intervene under Fed. R. Civ. P. 24(b)(2). (Filing 87.) The State represents that its proposed intervention is "limited to asserting the claims raised in Plaintiffs' Second Amended Complaint" and such claims "rest on identical legal reasoning" as that relied upon by the Liquor Retailers—that is, by attempting to regulate liquor sales on land that is not part of a federally recognized Indian Reservation or located in "Indian country," the Tribe has exceeded its authority under 18 U.S.C. § 1161 and federal common law.

---

[1] As noted previously, it appears that the caption for this case may have changed, but I shall retain the original caption in the absence of a motion to substitute parties or change the caption. (Filing 85 at n.1.)

[2] For clarity, I have characterized this dispute simply as whether certain land is within the Omaha Indian Reservation or "Indian country." The issue, described in more detail, is whether 50,157 acres in Thurston County, Nebraska, lying west of the now-abandoned right-of-way of the Sioux City and Nebraska Railroad was "diminished" from the Omaha Indian Reservation by an 1882 Act of Congress which authorized the sale of part of the Omaha Indian Reservation west of the railroad right-of-way to homesteaders.

[3] This case has been stayed since October 4, 2007, to allow the plaintiff Liquor Retailers to exhaust their remedies in the Omaha Tribal Courts. (Filing 53.) The Omaha Tribal Court issued its judgment finding in favor of the Omaha Tribal Council on February 26, 2013, and the matter is now before me for resolution. (Filing 86, Omaha Tribal Court Judgment; Filing 85, Memorandum and Order (parties shall file stipulated facts, cross-motions for summary judgment, evidence, and briefs; United States Department of Justice and Nebraska Attorney General may file amicus briefs).)

(Filing 87 at CM/ECF p. 2.)

The State asks to intervene for two related reasons—(1) the need for a federal ruling on whether land *outside* the Pender municipal limits is part of the Omaha Reservation or "Indian country," recognizing that (2) classifying the land as part of the Omaha Reservation will adversely affect the State's ability to protect the public health, safety, and welfare of its citizens and residents located in the disputed area.

As to the State's first reason for intervention, the State asserts that the current plaintiffs' claims are limited to land within the municipal boundaries of Pender, Nebraska, whereas the State's claims involve a more expansive geographic area—namely, 50,157 acres of land lying west of the now-abandoned right-of-way of the Sioux City and Nebraska Railroad Company, which includes land outside of Pender. (Filing 87 at CM/ECF p. 2.) As alleged in the State's proposed Complaint-in-Intervention (Filing 87 at CM/ECF p. 7), the current plaintiffs have "asserted claims . . . resisting the Tribe's lawless assertion of jurisdiction within Pender itself, but are not situated to challenge the Tribe's assertion of jurisdiction in areas beyond Pender's boundaries."

Second, the State alleges that the Omaha Tribe and the United States Department of Justice have recently announced, or taken action demonstrating, their intent to treat the area in dispute as part of the Omaha Indian Reservation, which poses "a clear and imminent threat to the State's ability to protect the public health, safety and welfare of its citizens and residents within the Disputed Area and highlights the need for a definitive federal court ruling on the status of the Disputed Area." (Filing 87 at CM/ECF p. 8.) Specifically, on February 12, 2013, the Tribe demanded that the Nebraska Department of Revenue pay the Tribe a share of the motor fuels tax attributable to retailers in the 50,157-acre area (not just within Pender) because the Tribe considers this entire area part of the Omaha Indian Reservation. (Filing 87 at CM/ECF pp. 8, 16 (Letter from Omaha Tribe to Douglas A. Ewald, Nebraska Tax Commissioner).) Further, the United States Department of Justice ("DOJ") advised the

3

State on October 9, 2012, that it has decided the land in question is part of the Omaha Indian Reservation and intends "to assert the same federal jurisdiction in Pender that we routinely exercise in other parts of 'Indian Country.'" (Filing 87, Letter from U.S. Attorney Deborah R. Gilg to Gov. David Heineman at CM/ECF p. 14.)

The plaintiff Liquor Retailers do not object to the State's proposed intervention, but the Tribe does. (Filing 87 at CM/ECF p. 2; Filing 92.)

## A. INTERVENTION AS MATTER OF RIGHT

A party is entitled to intervene as a matter of right if: (1) it claims an interest relating to the subject of the action; (2) the disposition of the action may impair or impede its ability to protect its interest; and (3) its interest is not adequately represented by existing parties. The party seeking intervention must satisfy all three parts of the test.

*Little Rock School Dist. v. North Little Rock School Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) (internal citations omitted); Fed. R. Civ. P. 24(a)(2).[4] The motion to intervene must be timely, and the court must construe Rule 24 liberally. Fed. R. Civ. P. 24(a); *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995).

---

[4]Fed. R. Civ. P. 24(a) provides:

On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

*1. Claims an Interest*

The Tribe does not dispute that the State, acting through the Attorney General, has a cognizable interest in the outcome of this litigation—that is, the extent of its jurisdiction on the 50,157 acres at issue. (Filing 92, Defs.' Br. Opp'n Mot. Intervene at CM/ECF p. 6.)

*2. Disposition May Impair Ability to Protect Interest*

This factor does not require demonstrating "to a certainty that [an intervenor's] interests *will* be impaired in the ongoing action. It requires only that they show that the disposition of the action *may* as a practical matter impair their interests." *Union Elec. Co.*, 64 F.3d at 1162 (internal quotation marks and citations omitted). The "interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id*. (internal quotation marks and citations omitted).

This court's decision as to whether the 50,157 acres at issue was "diminished" from the Omaha Indian Reservation by an 1882 Act of Congress will clearly impact (and possibly impair) the State's legal interest in, and authority over, Pender and the remaining geographical area, including the State's ability to enforce the law and protect the health, security, and welfare of the area's residents.

*3. Interest Not Adequately Represented by Existing Parties*

Under Fed. R. Civ. P. 24(a)(2), "the party seeking to intervene has the burden to show that no existing party adequately represents its interests." *Union Elec. Co.*, 64 F.3d at 1158. Whether representation is adequate is determined by "comparing the interests of the proposed intervenor with the interests of the current parties to the action. A party generally need only make a minimal showing that representation may be inadequate to be entitled to intervene on that basis." *Little Rock*, 378 F.3d at 780

(internal quotation marks and citations omitted).

As discussed above, the Omaha Tribe recently demanded a share of motor fuels tax collections from the Nebraska Department of Revenue based on the decision of the Omaha Tribal Court that the 1882 Act of Congress did not "diminish" the boundary of the Omaha Indian Reservation, the question that is now under consideration in this court. (Filing 89-3.) The Tribe's request for money from the State obviously implicates a direct interest of the State which hinges on a resolution of the substantive issue in this case.

The geographic area that will be affected by this court's decision is not only the Village of Pender, as represented by the current plaintiffs, but consists of approximately 50,157 acres west of the now-abandoned right-of-way of the Sioux City and Nebraska Railroad Company. Because the current plaintiffs have raised the boundary issue only as to Pender, Nebraska, those plaintiffs cannot adequately represent the interests of the State as to the land at issue that is *outside* the municipal boundaries of Pender.

Even if the current plaintiffs could adequately represent the State's interests, the State is nevertheless statutorily empowered to represent its interests in this matter. *See* Neb. Rev. Stat. § 84-202 (Westlaw 2013) ("The Department of Justice shall have the general control and supervision of all actions and legal proceedings in which the State of Nebraska may be a party or may be interested . . . ."); Neb. Rev. Stat. § 84-203 (Westlaw 2013) ("The Attorney General is authorized to appear for the state and prosecute and defend, in any court or before any officer, board or tribunal, any cause or matter, civil or criminal, in which the state may be a party or interested."); Neb. Rev. Stat. § 84-206.01 (Westlaw 2013) ("The Attorney General shall commence, prosecute, or defend all actions relating to Nebraska's boundary line which affect the rights and interests of Nebraska landowners whose land is being taxed by Nebraska political subdivisions. . . . The Attorney General shall also take any other action that is required in his or her judgment to protect all rights and interests of such landowners.").

### 4. *Timeliness of Motion to Intervene*

The timeliness of a motion to intervene is determined by "considering all the circumstances of the case." *Union Elec. Co.*, 64 F.3d at 1159. Several factors are relevant to determining timeliness of a motion to intervene: "(1) how far the litigation had progressed at the time of the motion for intervention, (2) the prospective intervenor's prior knowledge of the pending action, (3) the reason for the delay in seeking intervention, and (4) the likelihood of prejudice to the parties in the action." *United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010) (internal quotations marks, brackets, and citations omitted). "The question for determining the timeliness of the motion to intervene is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *Union Elec. Co.*, 64 F.3d at 1159.

#### a. *Progression of Litigation & Likelihood of Prejudice*

This case was originally filed on April 11, 2007. (Filing 1.) After entry of a temporary restraining order regarding enforcement of the Omaha Tribe's liquor regulations and denial of the Tribe's motion to dismiss, the plaintiff Liquor Retailers were given leave to file an amended complaint on October 4, 2007, but the case was immediately stayed to allow the Liquor Retailers to exhaust their remedies in the Omaha Tribal Courts. (Filings 16, 24, 33, 53, 55.) The Omaha Tribal Court's judgment was issued more than five years later, on February 26, 2013, and was filed in this court on March 4, 2013. (Filing 86.) On February 19, 2013, and after a status conference with counsel, the stay in this court was lifted; the parties were directed to file a statement of stipulated facts, cross-motions for summary judgment, briefs, and evidence; and the United States Department of Justice and the Nebraska Attorney General were invited to file amicus briefs. (Filing 85.) Barring motions to extend the time for filing these documents, this matter will be ripe for resolution on or about July 29, 2013.

While this case was filed six years ago, five of those years were spent in the Omaha Tribal Court. Proceedings in this court have just begun, but will most likely be completed in the near future, as the court and counsel have agreed to submit cross-motions for summary judgment which will presumably dispose of this case.[5] (Filing 85.) Because the State has vowed to adhere to the current motion and briefing schedule, the State's intervention will not prejudice the existing parties. (*See* Filing 88 at CM/ECF p. 5 (State represents that its intervention "will in no way disturb the Court's briefing schedule for a final resolution"); Filing 94 at CM/ECF p. 2 (State confirms that its intervention "in no way threatens the Court's schedule for the remainder of this case given that the Court has ordered a briefing schedule for a final resolution to which the State has indicated it will adhere").) Therefore, the parties are not likely to be prejudiced by the State of Nebraska's intervention.

### b. *Prior Knowledge of Pending Action & Reason for Delay in Seeking Intervention*

The State primarily argues that although it has always been aware of this litigation, a recent change in circumstances necessitates its intervention. Specifically, the United States Department of Justice advised the State on October 9, 2012, that it has decided the land in question is part of the Omaha Indian Reservation. (Filing 89-2.) The State views this pronouncement as a change in policy upon which the State relied in taking a limited role in this litigation before now (i.e., before this policy change, both federal and state authorities viewed the land in question similarly, so minimal State participation was appropriate). The evidence that has been filed in this case supports the State's argument, and the parties' recently-filed Joint Stipulation of Facts makes it clear that the parties have made this change in policy relevant to this case. (*See* Filing 8-2 at CM/ECF pp. 10-17 (United States Department of the Interior

---

[5]I recognize the parties have engaged in extensive discovery as part of the Omaha Tribal Court proceedings, and this evidence will likely be used in this court for purposes of the parties' cross-motions for summary judgment.

8

letter and opinion by Marcia M. Kimball dated June 27, 1989, concluding that "under the 1882 Act the land to the west of the right of way went out of Indian control when it was opened for settlement"); Filing 8-3 at CM/ECF pp. 1-5 (Opinion of Nebraska Attorney General dated February 15, 2007, citing Kimball opinion and concluding that "the property west of the center of the right of way described in the 1882 Act went out of Indian control when it was opened for settlement, and should not be considered part of the Omaha Reservation"); Filing 93-1 at CM/ECF pp. 1-27 (United States Department of the Interior letter by Priscilla Wilfahrt dated April 24, 2008, concluding that "the Omaha Indian Reservation does not evidence a diminishment of the reservation boundaries" and recommending that Kimball opinion be "reconsidered upon receipt of additional substantive information"; each page of letter labeled "Attorney/Client Privileged—Attorney Work Product **DO NOT RELEASE**"); Filing 93-2 at CM/ECF p. 1 (United States Department of the Interior Memorandum dated April 16, 2012, from Deputy Solicitor of Indian Affairs officially superseding Kimball opinion by stating "[t]he June 27, 1989 letter is hereby withdrawn and is not to be relied upon or used by your office"); Filing 100 at CM/ECF pp. 19-22 (Joint Stipulation of Facts filed June 10, 2013 under "Other Determinations Regarding the Disputed Territory").)

I conclude that the State has adequately explained its delay in seeking intervention.

### 5. *Conclusion Regarding Intervention as of Right*

Having established the requirements specified in Fed. R. Civ. P. 24(a), the State of Nebraska will be granted leave to intervene as a matter of right.[6]

---

[6] The defendants do not argue that the State of Nebraska lacks Article III standing to intervene. (Filing 92.)

9

## B. PERMISSIVE INTERVENTION

"On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The grant or denial of permissive intervention is in the discretion of the trial court." *Union Elec. Co.*, 64 F.3d at 1170 n.9.

In determining whether one may permissively intervene in an action under Fed. R. Civ. P. 24(b), "whether the proposed intervenor's participation is 'necessary to advocate for an unaddressed issue' is not the correct standard." *Coffey v. C.I.R.*, 663 F.3d 947, 951 (8th Cir. 2011) (quoting *Appleton v. C.I.R.*, 430 Fed. Appx. 135, 138 (3rd Cir. 2011)). "Instead, the standard is whether the intervention will cause 'undue delay' or 'prejudice the adjudication of the original parties' rights.'" *Coffey*, 663 F.3d at 951 (quoting Fed. R. Civ. P. 24(b)(3)). "This inquiry is the principal consideration in ruling on a Rule 24(b) motion." *Coffey*, 663 F.3d at 951 (internal quotation marks and citations omitted).

Even if the State of Nebraska had not adequately established its right to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), the State is entitled to permissively intervene pursuant to Fed. R. Civ. P. 24(b)(2). As discussed above, the State of Nebraska raises the same question of law as that currently pending between the Liquor Retailers and the Tribe, except as to an expanded geographical area.[7]

---

[7]*Compare* Filing 55, Second Amended Complaint, at CM/ECF p. 9 (requesting judgment declaring that Pender, Nebraska, is not within boundaries of Omaha Indian Reservation and that Defendants may not enforce part of Omaha Tribal Code in Pender and injunction prohibiting enforcement of Code in Pender, Nebraska) *with* Filing 87, State of Nebraska's Proposed Complaint-in-Intervention as Plaintiff-Intervenor, at CM/ECF p. 11 (requesting judgment declaring that Omaha Indian Reservation was diminished by 1882 Act and disputed area is not within boundaries of Omaha Indian Reservation and injunction prohibiting Omaha Indian Tribe from asserting any Tribal jurisdiction within disputed area).

Further, the State's intervention will not cause undue delay or prejudice to the existing parties because the State has agreed to adhere to the current motion and briefing schedule, which will most likely resolve this case in its entirety.

### C. PROCEDURAL DETAILS

After the stay of this matter was lifted on February 19, 2013, I ordered the parties to file motions for summary judgment, stipulated facts, briefs, and evidence. However, I note that the Tribe has not filed an answer to the Liquor Retailers' second amended complaint (filing 55), which was filed the same day as this matter was stayed for its five-year stint in the Omaha Tribal Court. For the purpose of completing the pleadings, I will enter a general denial on behalf of the Tribe.

Having granted the State of Nebraska the right to intervene upon the concession that the State will abide by the schedule set by the court, it is apparent that the briefing schedule should be adjusted to recognize the State of Nebraska's interest. Therefore, I will hold a telephone conference with counsel on that issue which shall be coordinated by counsel for the State of Nebraska.

IT IS ORDERED:

1. The Motion of State of Nebraska for Leave to Intervene as Plaintiff (Filing 87) is granted;

2. The State of Nebraska is granted leave to file its Complaint-in-Intervention within five (5) calendar days of the date of this memorandum and order, and such complaint shall remain identical to the Complaint-in-Intervention now appearing as an attachment to the State of Nebraska's Motion for Leave to Intervene at Filing 87;

3. Upon the filing of the State of Nebraska's Complaint-in-Intervention, the

State of Nebraska shall be included in the case caption as Plaintiff-Intervenor;

4.  The State of Nebraska shall arrange and conduct a telephone conference between the undersigned and all counsel of record to discuss a briefing schedule. The State of Nebraska should contact my legal assistant, Kris Leininger, at 402-437-1640, to schedule the call.

5.  As an Answer to the Second Amended Complaint, a general denial is herewith entered on behalf of the Tribe.

DATED this 13th day of June, 2013.

BY THE COURT:
*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.