# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD M. SMITH, et al., <br><br> Plaintiffs, <br> and <br><br> STATE OF NEBRASKA, <br><br> Plaintiff-Intervenor <br> v. <br><br> MITCH PARKER, in his official capacity as Chairman of the Omaha Tribal Council, et al., <br><br> Defendants, <br> and <br><br> THE UNITED STATES, <br><br> Proposed Defendant-Intervenor | Case No. 4:07-cv-3101 |

## UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION TO INTERVENE

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division

Of Counsel:

Rebecca Ross, Attorney-Advisor
U.S. Department of the Interior
Office of the Solicitor
1849 C Street N.W.
Washington, D.C. 20240
Phone: (202) 208-4218
rebecca.ross@sol.doi.gov

DARON T. CARREIRO, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
Phone: (202) 305-1117
Fax: (202) 305-0275
daron.carreiro@usdoj.gov

Attorneys for the United States

**INTRODUCTION**

The United States moves to intervene as a matter of right in this action as a defendant pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b).  This case concerns the reservation boundaries of the Omaha Tribe of Nebraska (the "Tribe") and requires the Court to decide whether an 1882 Congressional Act authorizing the sale of land in the western part of the Tribe's reservation (the "Disputed Area") effectually diminished the Reservation.  The U.S. Department of the Interior ("Interior"), the United States Attorney's Office for the District of Nebraska, and the U.S. Environmental Protection Agency's Region 7 ("EPA" or "Region 7") have all already recognized that the Tribe's reservation boundaries remain intact, and have not been diminished.

The United States has a substantial interest in the interpretation and enforcement of federal treaties, statutes, and agency determinations regarding Indian interests, and in protecting the integrity of reservation boundaries.  In addition, the United States exercises unique governmental authority within Indian country, including, for example, certain criminal jurisdiction and federal environmental permitting authority, including within the Disputed Area.  The State, as a recently added intervenor-plaintiff, has made entirely new allegations challenging federal interests and jurisdiction in the Disputed Area.  Thus, the United States' intervention is proper.

The United States has monitored the present litigation, considered the expert reports produced by the parties, and prepared its own opinion, at the agency level, after an independent review of many of the same factual and legal issues in this case.  The United States was also involved as *amicus curiae* during the tribal court litigation, and submits this Motion within one day of the Court permitting the State to intervene.   This application is timely, and intervention

- 1 -

will not prejudice any parties. The United States also seeks to litigate many of the same issues before the Court, some only recently added by the State, yet no party adequately represents the United States' own sovereign interests.

Counsel for the United States conferred with counsel for plaintiffs, defendants, and the State of Nebraska. Defendants and the State of Nebraska do not oppose this motion, and the plaintiffs take no position.

## RELEVANT BACKGROUND REGARDING UNITED STATES' INTERESTS

For the last five years, this case was litigated extensively in Omaha Tribal Court, which issued a Memorandum Opinion and Order on February 4, 2013, holding that the Tribe's reservation boundaries were not diminished following the 1882 Act. The tribal court opinion was docketed in this Court (ECF No. 82-1) and contains most of the relevant factual background. The following additional facts relate to the interests of the United States at stake in the litigation.

First, Interior has already studied the 1882 Act and the Tribe's boundaries in depth, and its well-researched factual and legal analysis concluded that the western boundary of the Omaha Reservation has not been diminished. *Affidavit of Adrienne Gaziano*, Ex. B (Sept. 5, 2012 Interior Op.) at 22. Although a prior opinion from the Interior Twin Cities Field Solicitor's Office in 1989 reached a different conclusion (ECF No. 8-2), the 1989 opinion conflicts with other Interior memoranda, and has been rejected by Interior as legally and factually inaccurate. In particular, the 1989 opinion relied on flawed and incomplete factual information, and failed to analyze the question of reservation diminishment consistent with Supreme Court case law. *Affidavit of Adrienne Gaziano*, Ex. B (Sept. 5, 2012 Interior Op.) at 21.

In several other instances, Interior has stated that the boundaries of the Tribe's reservation have not been diminished:

- 2 -

- Interior opinion of June 23, 1900 (30 Pub. Lands Dec. 82, 1900 WL 1827, at *1-2) (the 1882 Act opened land to settlement "**in the Omaha Indian reservation**" and settlers under the 1882 Act settled "**lands embraced in the Omaha reservation**") (emphasis added).

- Interior memorandum of August 13, 1999 (*Affidavit of Adrienne Gaziano*, Ex. C) ("the Omaha Reservation boundaries have not been changed or altered since its establishment by the survey of 1855 [with the exception of] the cession of March 6, 1865 . . . and the purchase for the Winnebago Tribe according to the Act of June 22, 1874").[1]

- Interior opinion of April 24, 2008 (ECF No. 93-1) at 26 ("a plain reading of the treaties and statutory language involving the Omaha Indian Reservation does not evidence a diminishment of the reservation boundaries" and "the documentation of legislative history and surrounding circumstances which is available in the record does not show a contemporaneous understanding that the reservation would be diminished").

- Interior memorandum of April 16, 2012 (ECF No. 93-2) ("[t]he April 24, 2008 letter supersedes [the] letter of June 27, 1989" and "[t]he June 27, 1989 letter is hereby withdrawn and is not to be relied upon or used").

- Interior memorandum of September 5, 2012 (*Affidavit of Adrienne Gaziano*, Ex. B) at 1-2 ("After reviewing the 1989 Opinion, the 2008 Opinion, the Tribe's and Plaintiffs' expert reports, and after conducting our own research, we conclude that the analysis in the 2008 Opinion is correct and is incorporated herein by reference. Below we supplement the 2008 Opinion by restating the Supreme Court jurisprudence concerning reservation diminishment; discussing the history of the Omaha Tribe and its Reservation; analyzing legislation enacted in 1872 and 1882; and determining that neither act diminished the Tribe's reservation.").

Second, the United States exercises certain criminal jurisdiction on the Omaha Reservation – including within the Disputed Area – pursuant to 18 U.S.C. §§ 1152 and 1153.

---

[1] When the State defended against reservation diminishment claims in separate but related litigation in 2006, it attached correspondence from Interior relying on the 1999 memorandum. See Exhibit 4 in Support of Defendants' Motion to Dismiss, Lamplot v. Heineman, No. 4:06-cv-3075 (D. Neb. July 20, 2006), ECF No. 25 (letter from Interior stating "[t]he attached memorandum . . . issued on August 13, 1999 was developed to address the question of diminishment of the Omaha Reservation and its boundaries. **As can be seen from the text, the Region and this Agency hold that no diminishment within the vicinity of the Village of Pender, Ne. has occurred**.") (emphasis added); see also Exhibit 5 in Support of Defendants' Motion to Dismiss, Lamplot v. Heineman, No. 4:06-cv-3075 (D. Neb. July 20, 2006), ECF No. 25 ("**the Village of Pender is within the exterior boundaries of the Omaha reservation**") (emphasis added). As a result, the State cannot credibly claim now that the United States' legal position in 2013 is an abrupt reversal adopted only recently, or that the state was previously unaware of it. See ECF No. 88 at 6-8.

Solem v. Bartlett, 465 U.S. 463, 467 (1984) ("Federal, State, and Tribal authorities share jurisdiction over these lands if the relevant surplus land act did not diminish the existing Indian reservation because the entire opened area is Indian country under 18 U.S.C. § 1151(a)."). The U.S. Attorney for the District of Nebraska explained the application of federal, state, and tribal jurisdiction on the Omaha Reservation in her October 9, 2012 letter to Nebraska Governor Heineman. ECF No. 89 Ex. 1.

In fact, in 1969, the State expressly "retroceded" to the United States "all jurisdiction over offenses committed by or against Indians in the areas of **Indian country located in Thurston County, Nebraska**," with the exception of offenses involving the operation of motor vehicles on public roads or highways. Res. 37, 80th Legis., 1st Sess. (Ne. 1969) (emphasis added), reprinted in United States v. Brown, 334 F. Supp. 536, 544-55 (1971). The State's retrocession was accepted by Interior as effective October 25, 1970, with a detailed description of "Indian country located within the boundaries of the Omaha Indian Reservation in Thurston County." Dept. of Interior, Notice of Acceptance of Retrocession Jurisdiction, 35 Fed. Reg. 16598 (Oct. 24, 1970). And this Court subsequently upheld the validity of the retrocession. Brown, 334 F. Supp at 540-41. Significantly, "**Indian country located within the boundaries of the Omaha Indian Reservation in Thurston County**" was defined with precision (by specific corners of townships, ranges, and sections) as bounded on the west by "the west boundary line of the Omaha Indian Reservation as originally surveyed" – the western boundary of the Tribe's 1854 Treaty reservation, encompassing the Disputed Area, unaffected by the 1882 Act or any other alleged diminishment. 35 Fed. Reg. 16598. See also Omaha Tribal Ct. Mem. Op. and Order (ECF No. 82-1) at 39-41 (describing retrocession in greater detail).

This definition also matches the State's statutory definition of Thurston County: "[c]ommencing at a point where the west boundary of the Omaha Indian reservation intersects the south line of section thirty-four, township twenty-five, north, range five, east" and after outlining the southern, eastern, and northern borders of Thurston county, "then[] south along the west line of the Winnebago and Omaha Indian reservations to the place of beginning." Neb. Rev. St. § 22-187. In other words, the State statutorily defines the Reservation as encompassing the Disputed Area, including Pender.

Third, and finally, EPA Region 7 previously determined that the Reservation was not diminished, that Pender remains within the exterior boundaries of the Reservation, and that EPA is therefore the appropriate authority for issuing pollution discharge permits to facilities in Pender. Its decision was part of a ten-year process, begun in 1997 when the State proposed to issue a National Pollution Discharge Elimination System ("NPDES") permit to a waste water treatment facility. Region 7 objected, arguing that the State lacked authority to implement the NPDES program in Indian country. Region 7 then issued draft permits for the Pender facility in 2002 and 2006, and accepted public comments. See EPA Region 7's Motion to Dismiss Petition for Review, In re Village of Pender Waste Water Treatment Facility (EPA Env. App. Bd. Apr. 11, 2007), available at http://yosemite.epa.gov/oa/eab_web_docket.nsf/Filings%20By%20Appeal%20Number/2ABEBADB35C14DED852573000060141A/$File/Dismiss...4.pdf.

Comments were filed challenging EPA's jurisdiction, arguing that "Pender was removed from the Omaha Indian Reservation by an Act of Congress, August 7, 1882." Id. at Ex. C (Comments from Teri Lamplot on Draft Permit). Region 7 considered the comments, but ultimately concluded that the Village of Pender remained within the exterior boundaries of the

- 5 -

Omaha reservation. Id. at Ex. D (EPA's Response to Comments on Draft Permit). It then issued a final permit that was also challenged by three separate petitions for review, but the Environmental Appeals Board dismissed all of the petitions on standing grounds. In re Village of Pender Waste Water Treatment Facility, 2007 WL 1221209 (EPA Env. App. Bd. April 19, 2007).

EPA has now received additional applications for NPDES permits in the Disputed Area.

## ARGUMENT

### I. The United States Is Entitled to Intervene as a Matter of Right

The United States satisfies the Rule 24(a) criteria for mandatory intervention. Under that rule, on timely motion, the Court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In addition, "Rule 24 is construed liberally, and [the court is to] resolve all doubts in favor of the proposed intervenors." United States v. Union Elec. Co., 64 F.3d 1152, 1158 (8th Cir. 1995).

#### A. The United States' Application is Timely

"Whether a motion to intervene is timely is determined by considering all the circumstances of the case." Union Elec. Co., 64 F.3d at 1158-59. Factors relevant to this inquiry include the stage of the litigation and the possibility of prejudice to existing parties if intervention is permitted. Id. at 1159. Prejudice is determined by the effect of any delay, "not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." Id.

The most substantive litigation in this case thus far has occurred in Omaha Tribal Court. There, the parties served and responded to interrogatories, document requests, and requests for admission; served third-party subpoenas; conducted depositions; prepared and served expert reports; and filed and argued dispositive motions.[2] Unlike the State, the United States actively participated as *amicus curiae* before the tribal court. See, e.g., ECF No. 82-1 at 32-33 (tribal court noting the participation of the United States as *amicus curiae*); ECF No. 88 at 7 (State citing United States' *amicus curiae* brief).

The United States and the Nebraska Attorney General were invited to file *amicus curiae* briefs in this Court (ECF No. 85 at 2), but the State instead filed a motion to intervene, which this Court granted on June 13, 2013 (ECF No. 102). The United States submitted this Motion just one day later, the short delay caused only by the time needed to coordinate among the relevant federal agencies, to brief decision-makers, and to secure formal authorization to file a motion to intervene. The United States' intervention is particularly timely because the State has raised entirely new allegations regarding federal jurisdiction. Compl. in Intervention of Intervenor State of Nebraska (ECF No. 87) at ¶¶ 12, 14; Br. in Support of Mot. of State of Nebraska for Leave to Intervene as Plaintiff (ECF No. 88) at 2, 6-7, 9.

No parties will suffer undue prejudice as a result of the government's intervention. No dispositive motions have been filed, no hearings have been scheduled, and no rulings issued. The United States also stands ready to file an answer to Plaintiffs' Second Amended Complaint, as evidenced by the proposed answer attached to its Motion. No additional discovery will take

---

[2] These proceedings before the Omaha Tribal Court were described in Joint Status Reports filed in this Court (ECF No. 58 at ¶¶ 9-13; ECF No. 65 at ¶1; ECF No. 67 at ¶¶ 1-4; ECF No. 68 at ¶2-3; ECF No. 70 at ¶ 2; ECF No. 73 at ¶¶ 1-3; ECF No. 74 at ¶¶ 1-6; ECF No. 81 at ¶¶ 1-3; ECF No. 82 at ¶¶ 1-2) and in the Omaha Tribal Court's Memorandum Opinion and Order docketed in this Court (ECF No. 82-1).

place prior to the filing of motions for summary judgment, and the United States will work diligently to conform to the existing briefing schedule. This case presents a straightforward question of statutory interpretation, which can be quickly and efficiently resolved through cross motions for summary judgment. Furthermore, participation by the United States aids the Court's full consideration of the legal issues presented, and "serves the judicial system's interest in resolving all related controversies in a single action." Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir.1992).

### B. The United States' Has Substantial Legal Interests at Stake

There can be no question that the United States' interests in the subject matter of this litigation are "direct, substantial, and legally protectable" as required for intervention as a matter of right under Rule 24(a)(2). Union Elec. Co., 64 F.3d at 1161. In particular, the United States, as trustee for Indian tribes, has a substantial interest in the interpretation and enforcement of federal treaties, statutes, and agency determinations regarding Indian interests, and in protecting the integrity of reservation boundaries.

"The Constitution vests the Federal Government with exclusive authority over relations with Indian tribes." Montana v. Blackfeet Tribe, 471 U.S. 759, 764 (1985). The Supreme Court has long-recognized the general trustee relationship between the Government and tribal nations. United States v. Mitchell, 463 U.S. 206, 225 (1983) (noting the "undisputed existence of a general trust relationship between the United States and the Indian people"); Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 556-57 (1832) (federal treaties and statutes "consider the several Indian nations as distinct political communities, having territorial boundaries, within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged, but guaranteed by the United States.").

The United States has a legal interest in protecting the rights and sovereignty of the Tribe and its members under the United States Constitution and federal law, and enforcing its agencies' determinations regarding Indian interests and tribal boundaries. Moreover, the United States has prosecutorial jurisdiction on the Omaha Reservation under 18 U.S.C. §§ 1152 and 1153. In fact, at the request of the State, the United States has expressly assumed certain criminal jurisdiction over all of the Tribe's reservation in Thurston County, including in the Disputed Area. See Dept. of Interior, Notice of Acceptance of Retrocession Jurisdiction, 35 Fed. Reg. 16598 (Oct. 24, 1970) (defining the Tribe's reservation boundary, and scope of federal jurisdiction, as including the Disputed Area); Neb. Rev. St. § 22-187 (Nebraska statute defining the Omaha Indian Reservation as encompassing the Disputed Area); ECF No. 89 Ex. 1 (letter from United States Attorney for the District of Nebraska describing criminal jurisdiction on the Tribe's reservation, including within the Disputed Area). The United States has a right to protect its own sovereign authority over the reservation lands – authority that the State recognizes by statute but specifically challenges in this case. Finally, as described in detail above, the United States has substantial environmental permitting authority on the Omaha Reservation, and has taken the position that the Tribe's reservation was not diminished, that Pender remains within the exterior boundaries of the reservation, and that EPA is the appropriate authority for issuing pollution discharge permits in Pender.

These interests satisfy the legal interest requirement of Rule 24(a)(2).

### C. The United States' Interests May be Impaired by this Litigation

All of the interests described above hinge on whether the Disputed Area is within "Indian country" as defined by 18 U.S.C. § 1151(a), and clearly impact the United States' interests. For intervention, the United States needs to show only that its interests <u>may</u> be impaired, not that its

interests undoubtedly will be impaired. Kansas Pub. Ret. Sys. v. Reimer & Kroger Assocs., 60 F.3d 1304, 1307 (8th Cir. 1995).

The State expressly argued in prior litigation that "where diminishment of a reservation would result from actions taken in a law suit, the United States should be made a party to the action . . . ." Br. in Support of Defs.' Mot. to Dismiss, Lamplot v. Heineman, Case No. 4:06-cv-3075 (ECF No. 14) at 10 (D. Neb. May 18, 2006). In that case, the State was sued for collecting tribal taxes on motor fuels sales in the Disputed Area, including in Pender, and remitting a percentage of the tribal taxes to the Tribe. Thus, its argument that "United States should be made a party to the action" applies equally here.

### D. Existing Parties Do Not Adequately Represent the United States' Interests

"[P]ersons seeking intervention need only carry a 'minimal' burden of showing that their interests are inadequately represented by existing parties." Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 999 (8th Cir. 1993). The plaintiffs challenge the applicability of the Tribe's liquor ordinance, but do so in a manner contrary to already-established federal agency determinations regarding the Tribe's reservation boundary and the scope of federal jurisdiction. Now the State, as a recently added intervenor-plaintiff, makes entirely new allegations challenging federal interests and federal jurisdiction in the Disputed Area. While the current defendants – individual officers of the Tribe – might share with the United States the common legal goal of preserving the Tribe's reservation boundaries, they do not adequately represent the United States' own sovereign interests in interpreting federal treaties and statutes, in enforcing federal agency determinations, or in protecting federal law enforcement jurisdiction and environmental permitting authority. See Kansas Pub. Ret. Sys., 60 F.3d at 1308-09 (where interests are disparate, even though directed at a common legal goal, intervention is

- 10 -

appropriate); Sierra Club v. Robertson, 960 F.2d at 86 ("The 'tactical similarity' of the 'legal contentions' of a current party with that of a proposed intervenor . . . does not assure adequate representation.") (citation omitted). Adequate representation requires full participation by the United States.

### E. The United States Has Standing

The United States also has standing to proceed as an intervenor in this case. See Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1092 (8th Cir. 2011) ("When a party opposes a motion to intervene on the basis of standing, the prospective intervenor must allege facts showing the familiar elements of Article III standing. The prospective intervenor must clearly allege facts showing an injury in fact. The prospective intervenor must also allege facts showing that the alleged injury is fairly traceable to the defendant's conduct and that a favorable decision will likely redress the injury.") (internal citations and quotation marks omitted); see also Roeder v. Islamic Republic of Iran, 333 F.3d 228, 233 (D.C. Cir. 2003) ("any person who satisfies Rule 24(a) will also meet Article III's standing requirement").

As described in detail above the United States has direct, substantial, and legally protectable interests at stake in this litigation. Furthermore, if the United States were an active participant in this case, any determination that the 1882 Act diminished the Reservation boundaries would directly cause a concrete, particularized, and actual or imminent injury in fact. So would the State's threatened exercise of exclusive civil and criminal jurisdiction over the Disputed Area, which the United States has already determined to be, and is currently treating as Indian country. Finally, a favorable decision that the 1882 Act did not diminish the Reservation boundaries would redress the injury.

## II. The United States Meets the Standard for Permissive Intervention

Even if a party is not entitled to intervene as a matter of right, the Court has discretion to permit intervention, upon timely motion, to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).[3] Whether to grant permissive intervention pursuant to Rule 24(b) is wholly within the court's discretion South Dakota v. U.S. Dep't of Interior, 317 F.3d 783, 787 (8th Cir. 2003). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3).

The United States also satisfies the rule for permissive intervention because it has a claim or defense that shares with the main action a common question of law or fact: whether the 1882 Act diminished the Tribe's reservation boundaries. As already shown, the United States has substantial interests that may be impaired by this litigation, and no existing party adequately represents those interests. Furthermore, this motion is timely, and participation by the United States will aid the Court's full consideration of the legal issues.

## CONCLUSION

Based on the foregoing, the United States requests the Court to allow it to intervene in this action as a defendant and to file the proposed Answer attached to its motion.

---

[3] In addition, the Court may permit the federal officer or agency to intervene "if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2). The Court could alternatively grant permissive intervention under Rule 24(b)(2) because the parties' claims and defenses are based on statutes administered by the United States and its agencies, as well as on agency determinations made pursuant to federal statutory authority.

Dated: June 14, 2013

Respectfully submitted,

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division

/s/ *Daron T. Carreiro*
DARON T. CARREIRO, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
Phone: (202) 305-1117
Fax: (202) 305-0275
daron.carreiro@usdoj.gov

Of Counsel:

Rebecca Ross, Attorney-Advisor
U.S. Department of the Interior
Office of the Solicitor
1849 C Street N.W.
Washington, D.C. 20240
Phone: (202) 208-4218
rebecca.ross@sol.doi.gov

Attorneys for the United States

**CERTIFICATE OF SERVICE**

     I, Daron Carreiro, hereby certify that on June 14, 2013, I electronically filed the foregoing United States' Memorandum of Law in Support of its Unopposed Motion to Intervene with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to all registered CM/ECF users in this case.

                      /s/ *Daron T. Carreiro*
                      Daron T. Carreiro, Trial Attorney
                      Indian Resources Section
                      Environment and Natural Resources Division
                      United States Department of Justice
                      P.O. Box 7611
                      Ben Franklin Station
                      Washington, D.C. 20044-7611
                      daron.carreiro@usdoj.gov
                      Phone: (202) 305-1117
                      Fax: (202) 305-0275
                      daron.carreiro@usdoj.gov